UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIBEL MARES-OROZCO,<br><br>    Plaintiff–Petitioner,<br><br>v.<br><br>JUANA PEREZ GUZMAN aka JUANA MARES PEREZ; and JOEL MARES-OROZCO,<br><br>    Defendant–Respondents. | Case No. 2:23-cv-00026-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Plaintiff–Petitioner Maribel Mares-Orozco's ("Petitioner") ex parte Motion for Temporary Restraining Order and Expedited Hearing on Preliminary Injunction. Dkt. 2. In issuing the following Order, the Court makes no determination as to the merits of the Petition. Such determination will instead be made following an evidentiary hearing.

# II. BACKGROUND

On January 18, 2023, Petitioner filed a Verified Petition for return of child and for provisional relief under the Convention on the Civil Aspects of International Child Abduction (the "Convention"), T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11, and the

International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001–9011 (2014). Both countries at issue in this matter, Mexico and the United States, are signatories to the Convention. *See* https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html.

Petitioner is a resident and citizen of Mexico. She brings this action to secure the return of her now four-year-old daughter, J.J.M.O., to Mexico. Defendant–Respondents Juana Perez Guzman and Joel Mares-Orozco (collectively, "Respondents") are believed to be legal residents of the United States. The Petition alleges that in mid-June of 2019, Respondents kidnapped J.J.M.O. and brought her to the United States against Petitioner's will. Respondents are J.J.M.O.'s aunt and uncle, and they appear to currently be living in New Plymouth, Idaho.

In her Motion for Temporary Restraining Order, Petitioner explains that Respondents visited her in Arandas, Jalisco, Mexico in May of 2019. While they were staying with her, Respondents purportedly told Petitioner that they could obtain legal status in the United States for J.J.M.O., and would later help Petitioner and her older daughter obtain legal entry into the United States. To facilitate this arrangement, Petitioner signed an authorization and consent for Respondent Juana Perez Guzman to exercise temporary custody over J.J.M.O. However, prior to J.J.M.O.'s removal from Mexico, Petitioner alleges she learned that Respondents intended to illegally cross the Mexico/United States border with J.J.M.O. Upon this discovery, Petitioner changed her mind and promptly informed Respondents of her decision not to allow them to take J.J.M.O. to the United

States. Petitioner maintains Respondents were not happy with her decision, but that they initially appeared to accept it.

A short time later, in mid-June 2019, Petitioner explains she came home to discover Respondents had taken their things and kidnapped J.J.M.O. Petitioner immediately formally revoked the authorization and consent for temporary custody, and also contacted Respondents to demand the return of her daughter. Petitioner contends Respondents claimed they were still in Mexico and would return J.J.M.O., but that they did not do so. Sometime later, Respondents answered a call from Petitioner and informed her that they were in the United States. Respondents represented that they were waiting for Petitioner and her older daughter to come to the United States. Petitioner alleges she demanded that Respondents return J.J.M.O. to Mexico, but Respondents refused.

Upon learning of Respondents' refusal to return J.J.M.O. to Mexico, Petitioner sought help from the Mexican Government in securing J.J.M.O's return. Due to the Covid-19 pandemic and other issues, these efforts proved unsuccessful. On July 1, 2020, Petitioner completed, signed, and submitted a Hague Return Application to the Mexican Office of the Secretary of Foreign Affairs. The aforementioned agency forwarded Petitioner's application to the United States Department of State, Office of Children's Issues—the central authority in the United States for the Convention. On January 27, 2021, in accordance with Article 10 of the Convention, the U.S. Department of State sent a Voluntary Return letter to Respondent Juana Perez Guzman at her apparent home address in New Plymouth, Idaho. Respondents did not formally respond to the Voluntary Return letter, and have not returned J.J.M.O. to Mexico.

MEMORANDUM DECISION AND ORDER - 3

After learning of Respondents' refusal to return J.J.M.O. to Mexico, Petitioner alleges she has persistently attempted to contact Respondents about her daughter. She has attempted to reach Respondents through standard phone calls and text messages, instant messages through social media platforms, messages and calls through various phone applications, and by contacting Respondents' family members in the hope that they would pass along her message to Respondents. Petitioner attests that Respondents have failed to respond to any of her requests or attempts to communicate.

Beyond the alleged kidnapping, Petitioner alleges Respondents have committed numerous violations of her parental rights. For instance, on or about December 30, 2019, Respondents filed a Petition for Termination of Parental Rights and Adoption of Minor Child in Idaho State Court ("Idaho State Court Case"). Less than two weeks after the U.S. Department of State sent its Voluntary Return Letter, Respondents represented in the Idaho State Court action that there were: "No other known legal proceedings or cases . . . regarding the minor child or regarding the custody rights relating to the minor child." Dkt. 3, ¶ 38.

On or about September 7, 2021, the U.S. Department of State sent a letter to the Honorable Robert L. Jackson—the Payette County magistrate judge presiding over the Idaho State Court Case—informing him that Petitioner had filed an application for the return of J.J.M.O. under the Convention, and that the court should "not decide on the merits of custody until it has been determined that the child is not to be returned under this Convention[.]" *Id.*, ¶ 39. The current status of the Idaho State Court Case is unclear.

MEMORANDUM DECISION AND ORDER - 4

On December 5, 2022, Petitioner voluntarily submitted to an independent, third-party psychological exam authorized by the Mexican Government in connection with her efforts to obtain the return of J.J.M.O. The psychologist determined that Petitioner "is fit to have her children with her, she has empathy, parenting skills and an interest in being with them and helping them in their development." *Id*., ¶ 40.

In the instant Motion, Petitioner requests that the Court grant her a temporary restraining order and expedite a preliminary injunction hearing. Petitioner also asks that Respondents be required to demonstrate J.J.M.O.'s current wellbeing, and allow communication between Petitioner and J.J.M.O.

### III. LEGAL STANDARD

To maintain the status quo, the Court is empowered to take appropriate measures "to prevent . . . prejudice to interested parties by taking or causing to be taken provisional measures." Convention, art. 7(b). This Court "is permitted to implement all necessary procedures to prevent a child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a) (internal quotations omitted).

The standard for obtaining a temporary restraining order or preliminary injunction is the same. *Idaho v. Coeur d'Alene Tribe*, 49 F. Supp. 3d 751, 762 (D. Idaho 2014), *aff'd* 794 F.3d 1039 (9th Cir. 2015). To obtain a temporary or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Id*.

## IV. DISCUSSION

**A. Merits**

The Court finds Petitioner has met all four elements required to obtain temporary injunctive relief.

   1. *Likelihood of Success on the Merits*

In order to establish a prima facie case of wrongful retention under the Convention and ICARA, Petitioner must establish that J.M.M.O. was wrongfully removed from Mexico, or wrongfully retained in the United States, within the meaning of the Convention. 22 U.S.C. 9003(e)(1)(A).

In determining whether the removal or retention of J.J.M.O. is "wrongful" under the Convention, the Court must answer four questions: (1) when the removal or retention at issue took place; (2) in which state J.M.M.O. was habitually a resident immediately prior to the removal or retention; (3) whether the removal or retention breached the rights of custody attributed to Petitioner under Mexican law; and (4) whether Petitioner was exercising such custody rights at the time of the removal or retention. *Papakosmas v. Papakosmas*, 483 F.3d 617, 622 (9th Cir. 2007).

Petitioner has alleged Respondents wrongfully removed J.J.M.O. from Mexico in approximately 2019, and that Respondents have thereafter wrongfully retained J.J.M.O. in the United States. Petitioner contends that prior to the wrongful removal, J.J.M.O. was born, and had always lived, in Mexico. In addition, under Mexican domestic law, the doctrine of *patria postestad* governs "the relationship between parents and their children, conferring upon both parents, jointly, the broadest possible right over the children's care,

custody, and well-being." *Rodriguez v. Sieler*, 2012 WL 5430369, at *4 (D. Mont. Nov. 7, 2012). Respondent's purported wrongful removal and retention of J.J.M.O. is in breach of Petitioner's rights of patria postestad. Finally, when Respondents allegedly abducted J.J.M.O., it appears that J.J.M.O. lived with Petitioner and that Petitioner was exercising her custody rights over J.J.M.O. Petitioner has thus shown a likelihood of success on the merits of her Petition.

### 2. Likelihood of Irreparable Harm

Given that Respondents have already allegedly wrongfully retained J.J.M.O. in the United States for two or more years, there is a risk that they may leave this jurisdiction with J.J.M.O. in the absence of injunctive relief. The further concealment or removal of J.J.M.O. from this Court's jurisdiction is an immediate irreparable injury warranting preliminary injunctive relief. *Culculoglu v. Culculoglu*, 2013 WL 1413231, at *5 (D. Nev. 2013); *Smith v. Smith*, 2017 WL 6040068, at *2 (D. Idaho 2017); *Schaeffer v. Jackson-Schaeffer*, 2017 WL 11458052, at *3 (E.D. Tenn. 2017); *Alcala v. Hernández*, 2014 WL 5506739, at *6 (D.S.C. 2014); *Jenkins v. Jenkins*, 2008 WL 483312 (S.D. Ohio 2008).

### 3. Balance of the Equities

Respondents will not suffer any injury if they are ordered to maintain J.J.M.O. in her current location pending a hearing on the preliminary injunction. Respondents appear to live in Idaho with J.J.M.O. In fact, Respondents have attempted to terminate Petitioner's parental rights in the Idaho State Court Case. Respondents will not be harmed if the Court enforces their current status quo. By contrast, as explained above, Petitioner would be

irreparably harmed if Respondents leave Idaho's jurisdiction and again abscond with J.J.M.O.

### 4. The Public Interest

Finally, the Convention evidences the public policy for returning children wrongfully retained from their home country to the care of their lawful guardian in that country. Congress has explicitly endorsed this policy and has granted jurisdiction to the federal courts to enforce the Convention in actions such as this. 22 U.S.C. § §9001(a)(2), 9003. Thus, the public interest in this case weighs in favor of injunctive relief to ensure the safety and maintenance of J.J.M.O. pending a preliminary injunction hearing.

**B. Notice**

Injunctions and restraining orders are governed by Federal Rule of Civil Procedure 65. Under Rule 65(a), a preliminary injunction can be issued only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Issuance of an ex parte temporary restraining order, on the other hand, requires the moving party to show that "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party . . . can be heard in opposition[.]" Fed. R. Civ. P. 65(b). Federal Rule of Civil Procedure 65(b)(1)(B) also requires the movant's attorney to certify in writing "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Petitioner's counsel has filed the requisite certification. Dkt. 2, at 15. In his certification, Petitioner's counsel attests there is a significant chance that Respondents will attempt to conceal or remove J.J.M.O. from this Court's jurisdiction if they are given notice

of the instant Motion or the Petition. Petitioner's counsel highlights that the Respondents have already taken J.J.M.O. to the United States against Petitioner's will, and have withheld J.J.M.O from Petitioner since mid-June 2019. Since that date, Respondents have apparently also: (1) deceived Petitioner regarding the whereabouts of J.J.M.O.; (2) ignored Petitioner's repeated attempts to contact them; and (3) made fraudulent misrepresentations in the Idaho State Court Action.

The Court finds that the further removal or concealment of J.J.M.O. poses an immediate and irreparable injury that can be avoided only by the entry of an ex parte temporary restraining order issued before service of the Petition. The Court further finds that there is cause to issue this order without prior notice to Respondents to ensure the safety and well-being of J.J.M.O. and her maintenance in this jurisdiction. Moreover, the Court recognizes counsel's certification that the Respondents have not been contacted or served in this matter because it is imperative that a temporary restraining order be in place when Respondents receive service of the Petition. Accordingly, the Court enters the below Order.

## IV. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. The temporary restraining order shall be effective as of January 23, 2023, at 3:00 p.m. and shall expire exactly ten (10) days thereafter, which is February 6, 2023 at 3:00 p.m. pursuant to Federal Rule of Civil Procedure 6[1];

---

[1] The ten days do not include the date of this Order or intermediate Saturdays, Sundays, or legal holidays, which in this case excludes January 23, 28, 29 and February 4, and 5.

MEMORANDUM DECISION AND ORDER - 9

2. The removal of J.J.M.O. from the State of Idaho is prohibited;

3. Relocating the current residence of J.J.M.O. to another location within or outside of the State of Idaho is prohibited;

4. On or before January 27, 2023, Respondents must surrender any passports or travel documents for themselves and J.J.M.O., including J.J.M.O.'s travel documents and passport, to the United States District Court in Boise, Idaho for safekeeping;

5. Respondents shall make J.J.M.O. available to Petitioner to contact by a video conference call of not less than 30 minutes immediately upon service of this Order, and each week thereafter. This Order shall be understood to set the minimum and not the maximum on Petitioner's right of access to J.J.M.O. The Court will take into account Respondents' conduct in facilitating Petitioner's contact with J.J.M.O. in its decision on Petitioner's request for a preliminary injunction;

6. Respondents shall exchange their current contact information with Petitioner's counsel and shall thereafter respond to all communications in a timely matter;

7. The Court sets a preliminary injunction hearing for this case on February 6, at 1:00 p.m.;

8. Respondents shall appear at the preliminary injunction hearing and attest under oath to J.M.M.O.'s well-being;

9. The Court enters the following expedited briefing schedule:

a. Respondents shall file their response to Petitioner's Motion (Dkt. 2) on or before January 27, 2023.

b. Petitioner shall file a Reply brief, if any, on or before February 2, 2023.

DATED: January 23, 2023

David C. Nye
Chief U.S. District Court Judge