UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARIBEL MARES-OROZCO, | Case No. 2:23-cv-00026-DCN |
| Plaintiff–Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| JUANA PEREZ GUZMAN aka JUANA MARES PEREZ; and JOEL MARES-OROZCO | |
| Defendant–Respondents. | |

## I. INTRODUCTION

Before the Court is Petitioner Maribel Mares-Orozco ("Petitioner")'s motion for attorneys' fees. Dkt. 51. Petitioner requests $113,805.50 in fees and $11,354.95 in costs. Dkt. 51, at 6. Later, in her Reply, she requested an additional $1,487.40 in costs related to the return of the child. Dkt. 54, at 2. Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons below, the motion for attorneys' fees is GRANTED.

## II. BACKGROUND

In 2019, Juana Perez Guzman and Joel Mares-Orozco ("Respondents") wrongfully removed Petitioner's child from Mexico to the United States. Petitioner spent the next few years seeking the return of the child under the Convention on the Civil Aspects of International Child Abduction ("Convention"), T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11, and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001–

9011 (2014). Petitioner retained a law firm to represent her in the United States courts. Dkt. 51-1, at 3. The firm agreed to represent her on a "semi-bono" basis: regardless of how many hours the case required, Petitioner's responsibility for costs and fees was limited to $10,000. *Id.*

On June 13, 2023, the Court granted the petition and ordered that the child be returned to Mexico. Dkt. 50. Having prevailed in her suit, Petitioner moved for an award of attorneys' fees as provided under 22 U.S.C. § 9007(b)(3). Respondents filed a response (Dkt. 53) and Petitioner replied (Dkt. 54). In that reply, Petitioner moved for an additional award of "transportation costs related to the return of the child." Dkt. 54, at 1. Respondents filed an affidavit in opposition, which the Court will consider as a sur-reply. Dkt. 56. The matter is now ripe for adjudication.

## III.  LEGAL STANDARD

When a petitioner invokes the Hague Convention and successfully petitions to have a child returned under it, the court ordering the return must also order the respondent to pay petitioner's attorneys' fees, court costs, and transportation costs related to the return of the child. *See* 22 U.S.C. § 9003(b), 9007(b)(3). The only exception is if the respondent can establish that such an award would be "clearly inappropriate." § 9007(b)(3).

Beyond this statutory mandate, the Ninth Circuit has also expressed a policy favoring fee awards for petitioners who successfully seek the Convention's return remedy—even when their lawyers represent them for free. *See Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010). In *Cuellar*, the Circuit held that the fee shifting analysis is not affected when attorneys represent a petitioner pro bono. *Id*. It reasoned that "denying fees

MEMORANDUM DECISION AND ORDER - 2

. . . would encourage abducting parents to engage in improper delaying tactics whenever the petitioning parent is represented by pro bono counsel." *Id.* Further, the Convention might go unenforced without the services of pro bono counsel, and without regular awards of attorneys' fees, counsel might be difficult to find, especially for parents living in poverty. *Id.*

"After establishing that a plaintiff is entitled to attorneys' fees, the Court must calculate a reasonable fee award" using the Lodestar method. *Animal Legal Def. Fund v. Otter*, 2016 WL 2910266, *2 (D. Idaho May 18, 2016).

## IV.   DISCUSSION

There are two issues here: (1) is Petitioner entitled to attorneys' fees, court costs, and transportation costs related to the return of the child; and (2) if so, is the sum she requests reasonable? The Court addresses each question in turn.

### A.  Fee Shifting

Petitioner is entitled by statute to court costs, a fee award, and transportation costs related to the return of the child. She filed a petition seeking the return of her child under ICARA and prevailed. The Court ordered the child returned to Mexico within thirty days. Petitioner, as the prevailing party, moved for an award of court costs and attorneys' fees and filed an accompanying affidavit within the required fourteen days. Then, after the child was returned to the border, Petitioner paid out of pocket to travel and pick up the child and return the child to her home.

Under these circumstances, 22 U.S.C. § 9007(b)(3) requires a fee shifting award

MEMORANDUM DECISION AND ORDER - 3

unless it would be clearly inappropriate.[1] Though Respondents filed a response within the required timeframe, they have not established that a fee shifting award would be clearly inappropriate.

A survey of Hague Convention caselaw shows that other courts have rarely found attorneys' fees to be clearly inappropriate unless the Petitioner was engaged in some kind of affirmative misbehavior. *See, e.g.*, *Souratgar v. Fair*, 818 F.3d 72 (2d Cir. 2016) (holding that petitioner's multiple, unilateral acts of intimate partner violence against respondent rendered a fee award clearly inappropriate); *Ozaltin v. Ozaltin*, 708 F.3d 355 (2d Cir. 2013) (holding that petitioner inappropriately forum shopped to get U.S. courts to determine custody). At least one court has found a fee award clearly inappropriate when the respondent was financially insecure and fee shifting might have harmed the interests of the child. *In re Application of Stead v. Menduno*, 77 F. Supp. 3d 1029 (D. Colo. 2014) (finding it inappropriate to award attorneys' fees when petitioner was represented pro bono and respondent had a low salary, total savings of slightly over $2,000, 80 percent of respondent's income went toward housing, and most of the rest went toward providing for the child).

Here, Respondents argue that their case was not frivolous (Dkt. 53, at 3), that they did not use any inappropriate tactics to delay trial (*id.* at 3–4), and that they relied on Petitioner's flat fee, semi-bono representation arrangement in deciding to dispute the case,

---

[1] Contrary to Respondents' assertion that the statute "allows" the Court to order Respondents to pay the costs and expenses "incurred by" the Petitioner, the statute mandates that the Court "shall order" Respondents to pay the costs and expenses "incurred by *or* on behalf of" Petitioner. *Compare* Dkt. 53, at 2, *with* 22 U.S.C. § 9007(b)(3).

assuming it would limit their liability in the event of a fee award (*id.* at 4–5). These assertions may be true, but they are not sufficient to establish that an award of attorneys' fees is clearly inappropriate. None of these arguments resemble those that courts found persuasive in *Souratgar*, *Ozaltin*, or *Menduno*. Petitioner did not engage in any inappropriate affirmative act—she was neither violent nor forum shopping to acquire a better custody arrangement. Nor would an award of attorneys' fees be manifestly unjust or harm the interests of the child. Respondents are not destitute. The evidence shows that they own at least three homes, have dual incomes, and often send money back to Mexico. *See* Dkt. 34-20, at 20–57.

Respondents' affidavit alleges that their financial resources have been overstated, that they own zero homes in Idaho, that one of their properties in Mexico is an empty lot, and that they are generally unable to pay any kind of fee award. *See* Dkt. 56. These sworn statements, however, contradict Respondents' earlier sworn statements in this case. *See, e.g.*, Dkt. 16, at 2 (stating that Respondents have a second home in Mexico); *id.*, at 6 (stating that Respondents "have always owned" *two* homes in the United States); *id.*, at 7 (offering the address of the second home as 2[]30 SE Locust St., New Plymouth, ID, 83655). Further, in Respondents' adoption petition filed in Idaho state court, they stated that they purchased a second home in New Plymouth five years ago. Dkt. 3-22, at 3.

Given these discrepancies, the Court found it "appropriate to take judicial notice of information made publicly available by government entities." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Contrary to Respondents' assertions that they own no homes in Idaho, the public land records of Payette County, current as of July 2023,

show that 230 SE Locust St., New Plymouth, ID is owned by Joel and Juana Mares and has been since September 11, 2013.[2]

The Court is troubled by these discrepancies. Considering that willfully lying under oath is a federal crime, Respondents should be too. *See* 18 U.S.C. § 1621(2); *see also* Fed. R. Civ. P. 11. Because public records and prior testimony contradict many of the claims in Respondents' affidavit, the Court does not find their claims reliable or persuasive. Respondents' financial situation alone does not render a fee award clearly inappropriate.

Respondents argue that Petitioner had little incentive to negotiate or settle due to the flat rate fee. Dkt. 53, at 4–5. But this argument cuts both ways. If Respondents believed their potential liability for attorneys' fees was limited to the same flat rate, then they had the same limited incentive to negotiate or settle. It may be an unpleasant surprise to learn that one's liability is greater than one imagined, but that fact alone does not make a fee award inappropriate. This is also where the policy expressed in *Cuellar* comes into play. If successful pro bono counsel could not recover their actual fees in Convention cases, firms might not accept these cases pro bono, and the Convention's return remedy might come to hinge on the depth of a petitioner's pockets rather than the strength of his legal position. Under these circumstances, the fact that Petitioner seeks more in attorneys' fees that what she actually paid her attorneys does not make a fee award clearly inappropriate.[3]

_____

[2] *Property Info*, Payette County, Idaho, https://www.payettecounty.org/elected-officials/treasurer/property-tax-information (last visited Aug. 9, 2023) (accessible by following the "here" hyperlink, then the "Real Property" hyperlink, then the "Address" hyperlink, and inputting the address, "230 SE LOCUST ST").

[3] It is also true that Respondents, over Petitioner's objections, insisted on unusually extensive discovery. The Court permitted this discovery, but it served to drive up the costs of litigation for both parties. *See* Dkt. 54, at 6.

MEMORANDUM DECISION AND ORDER - 6

Respondents also claim that no receipts or records were provided to support the requested expenses. Dkt. 53, at 5. But the record shows that Petitioner served, emailed, and filed a signed affidavit listing her costs. Dkts. 51-1, 51-2.

Finally, Respondents claim that, in violation of Local Rule 54.1(a)(1), Petitioner failed to meet and confer with Respondents before moving for court costs. Dkt. 53, at 5–6. After the Court granted the return petition, Petitioner spoke with Respondents on the phone about the issue of attorneys' fees and costs. Dkt. 51-2, at 4. Respondents said they would get back to Petitioner. *Id.* By the time the fourteen-day deadline for moving for attorneys' fees and court costs had almost run, Respondents had not yet reached out, so Petitioner reached out to them. *Id.* Respondents said they were not available to meet before the deadline. *Id.*; Dkt. 53, at 6. Because Respondents were partially responsible for the failure to timely meet and confer, that failure does not make an award shifting attorneys' fees and court costs clearly inappropriate.

In sum, because an award of court costs, attorneys' fees and costs related to the return of the child is not clearly inappropriate, the Court must order Respondent to pay it under 22 U.S.C. § 9007(b)(3).

## B. Reasonableness of Requested Fees

"[A]fter establishing that a plaintiff is entitled to attorneys' fees, the Court must calculate a reasonable fee award." *Animal Legal Def. Fund*, 2016 WL 2910266, at *2. "Courts in the Ninth Circuit use the two-step 'lodestar method' to calculate reasonable attorneys' fee awards." *Edmo v. Idaho Dep't of Correction*, 2022 WL 16860011, *2 (D. Idaho Sept. 30, 2022). This lodestar figure, which multiplies the number of hours

reasonably expended on the litigation by a reasonable hourly rate, should rarely be adjusted. *Animal Legal Def. Fund*, 2016 WL 2910266, at *2 (cleaned up).

    *1.    Determining the Lodestar Figure*

As the first step, the Court must determine whether the hourly rate and the hours expended by the attorneys were reasonable. The burden is on the party seeking the fee award and can be carried by submitting evidence and documents supporting the hours worked. *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992). Generally, the court defers to the prevailing lawyer's professional judgment: "after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Then, the court multiplies "the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (cleaned up). This amount, the "lodestar figure," is presumptively reasonable. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996).

    a.    <u>Fee Rates</u>

In determining a reasonable fee award, the Court should consider both the "experience, skill, and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996), and "the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is typically the community in which the district court sits. *Schwarz v. Sec'y of Health and Hum. Services*, 73 F.3d 895, 907 (9th Cir. 1995). Rates have been found unreasonable when those rates

are based on other communities or adjusted for inflation. *NW. Bldg. Components, Inc. v. Adams*, 2023 WL 4628196 (D. Idaho July 18, 2023).

Here, Petitioner offers the rates of $300 and $275 for the attorneys and $215 and $140 for the paralegals. Dkt. 51-1. Respondents argue that normal rates in the community are between $225 and $250 for attorneys in Ada County and $75 and $125 for paralegals in Canyon County. Dkt. 53-1. But this Court is not a state district court, and this case was not an Idaho family law case. This is a federal court, and this case was brought under the international Hague Convention. Attorneys willing and able to take such cases are few and far between, as evidenced by the difficulty Petitioner had in finding an attorney. Dkt. 53-1, at 5. Further, Respondents' attached case, *Edmo*, shows that federal courts in Idaho often award attorneys' fees at rates of $400 or more. 2022 WL 16860011, at *11. For these reasons, the Court finds Petitioner's rates reasonable.

b.   Hours

"The district court may exclude from the fee request any hours that are excessive, redundant, or otherwise unnecessary." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (cleaned up). The fee applicant bears the burden of proof and "can meet his burden—although just barely—by simply listing his hours and identifying the general subject matter of his time expenditures." *Fisher v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (cleaned up). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Trevino*, 987 F.2d at 1397–98. District courts have discretion in

deciding whether hours charged are reasonable. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Balla v. Idaho State Bd. of Correction*, 2016 WL 6762651, *6 (D. Idaho Feb. 1, 2016); *Harlow v. Metro. Life Ins. Co.*, 379 F. Supp. 3d 1046, 1059 (C.D. Cal. 2019).

Here, the parties do not dispute the number of hours Petitioner asserts. Thus, the Court finds that the lodestar figure of $113,805.50 is presumptively reasonable, absent any adjustments.

2.    *Making Kerr Adjustments*

For the second step, the Court's job is to evaluate this lodestar figure against the so-called *Kerr* factors. *Animal Legal Def. Fund*, 2016 WL 2910266, at *2 n.2 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). But courts may only adjust the lodestar figure based on additional facts not already accounted for in the lodestar determination.[4] *See Morales*, 96 F.3d at 363–64 nn.8–9. "The burden of proving that such

---

[4] There are twelve *Kerr* factors that courts may consider when determining attorneys' fees:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70; *see also McGinnis v. Ky. Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1994) (holding that "no rote recitation is necessary" of all the *Kerr* factors). "[U]nder the lodestar approach, many of the *Kerr* factors have been held subsumed in the lodestar determination as a matter of law." *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). This is because "where a factor is generally considered as part of the lodestar, further adjustments based on that factor will ordinarily amount to impermissible double counting and will rarely be sustained." *Id.* at 488; *see also Blum v. Stenson*, 465 U.S. 886, 899 (1984) (describing the improper use of double counting in adjusting a fee award).

The *Kerr* factors subsumed in the lodestar figure are "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation . . . (4) the results

an adjustment is necessary" is on the party that wishes to make the adjustment. *Blum*, 465 U.S. at 898. Still, "only in rare instances should the lodestar figure be adjusted on the basis of other considerations." *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (cleaned up). When adjusting attorneys' fees, based on a lodestar amount, courts may consider four factors. *See supra* note 4 (describing which *Kerr* factors the court should not consider). These are "(1) time limitations imposed by the client or the circumstances, (2) the "undesirability" of the case, (3) the nature and length of the professional relationship with the client, and (4) awards in similar cases." *Id.*; *Kerr*, 526 F.2d at 70 (cleaned up).

Factor one—regarding time limitations—supports Petitioner. By the time she found counsel, she had already been separated from her child for three years. Considering that the convention mandates that "States shall act expeditiously in proceedings for the return of children," this passage of time placed additional pressure on counsel. Convention, art. 11.

Factor two—the undesirability of the case—supports Petitioner. As Respondent noted in their response to this request for attorneys' fees, other lawyers in the area did not believe that Petitioner had a case. Dkt 53-1, at 5. Petitioner also had trouble finding counsel to help her.

---

obtained," *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988) (cleaned up), and (5) the contingent nature of the fee agreement, which "is not permitted under the fee-shifting statutes," *City of Burlington v. Dague*, 505 U.S. 557, 565–67 (1992). Further, the time and labor required is reflected in the number of hours, and the customary fee and preclusion of other employment factors are reflected in the hourly rate. Both are part of the calculation of the loadstar amount, and therefore neither should be used to adjust the lodestar. *See Blum*, 465 U.S. at 898–902 (1984) (holding that reasons used to calculate the lodestar should not be used to adjust the lodestar because that would be "a clear example of double counting").

Factor three—the nature and length of the professional relationship with the client—was not argued by the parties as it more accurately goes to an ongoing attorney-client relationship. It is therefore neutral.

Finally, factor four—awards in similar cases—supports Petitioner. Other cases in which counsel worked similar hours awarded similar fees. Most notably in *Cuellar*, the petitioner's counsel worked for 387.25 hours and requested $91,262.50, Dkt. 51-1, at 65, while in this case Petitioner's counsel worked for 373.10 hours and requests $113,805.50 in fees and $11,354.95 in costs. Dkt. 51, at 6. Though admittedly imperfect, the totality of circumstances makes *Cuellar* a fair analogue.

Because the *Kerr* factors are either neutral or in favor of Petitioner, the Court will not adjust the lodestar figure. *See Animal Legal Def. Fund*, 2016 WL 2910266, at *2 (finding that the lodestar figure should rarely be adjusted). Petitioner's requested fees are reasonable. Having reviewed Petitioner's affidavit and bill of costs (Dkts. 51-1, 51-2), the Court also finds that her asserted costs are reasonable.

## C. Additional Costs

Petitioner, in her reply, requests additional reimbursement for transportation costs related to the return of the child. She has filed documentation showing the cost of transporting the child from the border, where she received the child from Respondents, back to her home. The Court finds that a full award of the costs entailed is appropriate and will order Respondents to pay an additional sum of $1,487.40.

## V.   CONCLUSION

Attorneys' fees and court costs are statutorily required in cases like this one, where

the Court orders the return of the Child to her home country, unless the respondent can show that such an award is clearly inappropriate. As the Respondent failed to establish that such an order would be clearly inappropriate and as the Ninth Circuit favors awarding attorneys' fees and court costs to dissuade persons from abducting children, the Court finds that an award of attorneys' fees and court costs is appropriate in this case.

The Court further finds that the sums requested by Petitioner are reasonable. In the interest of deterring others from kidnapping children and considering the Ninth Circuit's policy favoring attorneys' fees when a petitioner secures a child's return under the Convention, the Court GRANTS Petitioner's motion for attorneys' fees.

## VI.   ORDER

The Court HEREBY ORDERS:

1.   Petitioner's motion for attorneys' fees is GRANTED.

   a.   Respondents must pay Petitioner's counsel $126,647.85. This sum accounts for reasonable court costs, attorneys' fees, and costs related to the return of the child.

2.   Respondents must meet and confer with Petitioner's counsel to arrange payment terms within thirty days of this Order.

DATED: August 10, 2023

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13